**FILED**

JUN 1 5 2015

## IN THE CIRCUIT COURT OF LEE COUNTY, MISSISSIPPI

DAVID DREWS, CLERK

BY _____ **Deputy**

**ABRMP GROUP, LLC dba COMFORT SUITES**
**TUPELO, a Mississippi Limited Liability**
**Company**

**PLAINTIFF**

VS.

CIVIL ACTION NO. ___CV14-110(P)L___

1:15CV114-SA-DAS

**UNION INSURANCE COMPANY AND**
**RENASANT INSURANCE, INC.**

**DEFENDANTS**

### COMPLAINT

COMES NOW the Plaintiff, ABRMP Group, LLC, dba Comfort Suites Tupelo, a Mississippi limited liability company, and brings this Complaint against Defendants, Union Insurance Company and its agent, Renasant Insurance, Inc., and for cause would show as follows:

### PARTIES

1. Plaintiff, ABRMP Group, LLC dba Comfort Suites Tupelo, (hereinafter "Comfort Suites") is a Mississippi limited liability company, organized and existing under the laws of the State of Mississippi. Said company is in good standing, is registered to do business and is currently doing business in Mississippi, with its principal place of business at 1020 N. Gloster Street, Suite 102, Tupelo, Mississippi 38804.

2. Defendant, Union Insurance Company, (hereinafter "Union") is a foreign corporation, with its principal place of business located at 11201 Douglas Avenue, Urbandale, IA 50322. Said Defendant is registered to do business in the State of Mississippi, and can be served with process by service on its registered agent, Sharon Thibodeau, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232.

3. Defendant, Renasant Insurance, Inc., (hereinafter "Renasant") is a Mississippi corporation, organized and existing under the laws of the State of Mississippi. Said

-1-



**FILED**

TIME _____ AM / PM

OCT 01 2014

_____ CLERK

_____ D.C

corporation is registered to do business and is currently doing business in Mississippi, with its principal place of business at 315 West Main Street, Tupelo, Mississippi 38801. Defendant, Renasant Insurance, Inc. may be served with process by service on its registered agent for service of process, Stuart Johnson, 209 Troy St., Tupelo, Mississippi 38804.

## JURISDICTION AND VENUE

4. Jurisdiction and venue are proper in Lee County, Mississippi, because the events which make up the basis of this Complaint occurred in said county. The claims herein arise from certain tornado damage to property owned by Plaintiff and a dispute which has arisen with the Defendant, Renasant, in Lee County, Mississippi, the negligent adjustment by the agent of Defendant, Union, which is imputed to said Defendant, and Defendant, Union's failure to pay insurance proceeds due to the Plaintiff in connection with the constructive total destruction of its property which is located in Lee County, Mississippi. Furthermore, the bad faith actions of Defendant, Union, and its agent, Richard Martin, occurred at the loss premises in Tupelo, Lee County, Mississippi.

## THE POLICY

5. Defendant, Union, a part of the Berkley Southeast Insurance Group, sold and issued a property insurance policy bearing policy number CPA 4261756-40 to Plaintiff, Comfort Suites, insuring its hotel property for wind and water damage, as well as other losses, with a policy coverage period of 2/18/14 to 2/18/15.

6. The limits of insurance under said policy of insurance are outlined in the portion of the above-referenced policy of insurance provided to Plaintiff, which is attached hereto as

Exhibit "A" and incorporated herein by reference. Said policy limits include, but are not limited to, the following coverages:

    a.  Business Personal Property - $1,000,000.00;

    b.  Building - $7,700,000.00;

    c.  Business Income including Rental Value and Extra Expense - $500,000.00;

    d.  Outside Signs - $50,000.00; and

    e.  Debris Removal.

## THE TORNADO

7.  A tornado event occurred within Lee, Itawamba and Prentiss Counties in Mississippi on April 28, 2014. The tornado touched down near Tupelo, Mississippi at 2:42 PM (CST) and continued northeast before dissipating on Bay Springs Lake at 3:20 PM (CST). The National Weather Service registered this tornado as an EF-3 tornado event with maximum estimated wind speeds of 150 miles per hour. The preliminary maximum damage path measured 31 miles long (NOAA 2014). The tornado event caused substantial property damage in Tupelo, Mississippi, including but not limited to wind and water damage to the Plaintiff's property referenced above.

8.  The building owned by Plaintiff was constructed in 2008 in a workmanlike manner and in accordance with the building code of Tupelo, Mississippi.

9.  The subject building was well-maintained and was in excellent condition immediately prior to and at the time the tornado began its destructive path through Tupelo, Mississippi.

10. During the April 28, 2014 tornado and the accompanying rains, the roof was blown off of a substantial portion of the Comfort Suites building, causing substantial damage to the building and contents. Further, the damage to the building caused the sprinkler system to rupture and

-3-

cause additional water damage to the subject building and contents, resulting in a constructive total loss.

## BREACH OF CONTRACT

11. Plaintiff refers to paragraphs 1 through 10, inclusive, and incorporates them as if set forth in full herein.

12. The policy insured the building and business personal property owned by Plaintiff for any loss caused by wind or water damage and further provided coverage for lost business income, including rental value and extra expense interruption loss, and coverage for cost of debris removal. The damage caused by the tornado, the accompanying wind and rain, and the resulting sprinkler system rupture, as well as the resulting business interruption loss and cost of debris removal are all covered losses under the policy of insurance.

13. On several occasions, Defendant Union's adjuster, Richard Martin, acting within the course and scope of his employment and with authority from Defendant, Union, met with the insured, inspected the property and took photographs. On his initial inspection of the damage to Comfort Suites (which was not until approximately ten days after the tornado damage), the previous representative for Defendant Union, Al Black, while within the scope and course of his employment with Defendant Union, admitted to the Plaintiff that the building was likely a total loss. Although Martin realized that the property was a constructive total loss and the same had been referenced by the previous representative, Al Black, he set forth a plan or scheme to do everything possible to try to make the Plaintiff settle the claim far below its legitimate value. His intentional actions substantially delayed payment of the insurance claim regarding the building loss until August 12, 2014, almost 120 days after the date of the tornado damage, and further delayed payment of the remainder of the claim.

14. Martin, representing Defendant Union, first stated an opinion that the building could be repaired for less than $2 Million, and offered $1.7 Million for the damage to the building. The building is valued at $7.7 Million and is a constructive total loss according to independent consultants and the City of Tupelo.

15. The Defendant's scheme throughout the adjusting process was to settle the claim as cheaply as possible, notwithstanding the cost to repair or replace, and the fact that the building is a constructive total loss. On information and belief, Richard Martin's adjusting firm in Atlanta, Georgia, had several other contracts with Defendant Union for adjusting services. His firm was specifically retained by Union to adjust this claim on behalf of Union. On information and belief, Martin and his company desired to continue doing business with Union, so he was motivated to cut the Plaintiff's claim to a lower amount and put the insured Plaintiff in an untenable position in order to have to settle the claim for much less than its true value.

16. Martin made several disparaging remarks regarding Bruce Patel, a managing member of the Plaintiff company. Mr. Patel is of Indian descent. When Martin was urged by consultants for Mr. Patel to fully pay the claim in a timely manner, his remarks were that "I am not worried about him (Mr. Patel) because he is a millionaire and has more than twenty hotels." Within the first twenty minutes of Richard Martin's meeting with the Plaintiff's adjuster, Brian Revere, he made the remark that the Plaintiff's representative, Bruce Patel, must have done some "hanky panky" with the City's building inspector in order to have the original construction approved by the City of Tupelo. This statement was made without any basis and immediately set the tone for the adjuster's investigation, which was divisive and confrontational throughout the claim process. This remark made by the Defendant's adjuster, as well as his remark about Mr. Patel being a millionaire and that he could care less because

of his financial status in regard to handling this claim correctly, show the extreme prejudice that the adjuster, Richard Martin, had against Mr. Patel and the Plaintiff.

17. Further, after making the offer to settle the building damage for much less than its true value, approximately 120 days after the loss, the Plaintiff's consultants continued to urge the adjuster to get realistic about the building damage and pay the claim in full. After Union's adjuster conceded and more than doubled his estimated cost to repair the building damage, when asked for the check, he said essentially that it would be several weeks before receipt of the check. This was an intentional act on behalf of Union to put additional stress on the Plaintiff and its members, who did not have income at the time to pay their obligations to their banks, due to the tornado damage and the delay in adjusting and paying the insurance claim.

18. Upon being advised by Martin of yet another delay, the Plaintiff's consultants directly contacted another person within the company. They had the check for the building damage sent by overnight delivery, thus proving that there was never any need for the check to be held up for several weeks when it was actually delivered the next day by another person representing the company.

19. The Plaintiff submitted a Proof of Loss for a partial payment on the building claim for the agreed amount of the estimate prepared by the insurance company, a copy of which is attached as Exhibit "B" and incorporated by reference (this is the Proof of Loss that generated the check that Martin said would take several weeks to arrive).

20. Plaintiff also submitted a Proof of Loss for the business personal property that was damaged by the tornado and the subsequent rain and sprinkler rupture, making claim for the business personal property limits of $1,000,000, and providing proof of the business personal property loss in the amount of $1,036,997.00, in excess of the coverage amount. A copy of said Proof

of Loss is attached as Exhibit "C" and incorporated by reference. Although the business personal property loss exceeded the amount of insurance coverage, the claim was denied by Defendant Union.

21. Defendant Union failed to timely adjust and determine the loss to the business personal property, which is another example of his intentional actions in doing whatever possible to keep from paying the Plaintiff's legitimate insurance claim.

22. A supplemental Proof of Loss was filed by the Plaintiff for the remaining building loss and cost of debris removal in the amount of $3,771,849.10, a copy of which is attached hereto as Exhibit "D" and incorporated herein by reference. This Proof of Loss and request for payment was submitted after the City of Tupelo, Mississippi ordered that the subject property be demolished and raised, and debris removed from the premises, because it was a menace to the public health, safety and welfare of the community. The City of Tupelo determined that the building was damaged beyond repair and issued the demolition order, a copy of which is attached hereto as Exhibit "E" and incorporated herein by reference. The order was provided to Defendants and said Defendants rejected the Plaintiff's Proof of Loss on the basis that the policy contained a clause that would not require Defendant Union to pay any sums that were greater than the "cost of repair" or "actual cash value" due to any action, ordinance or order of any municipal or other government entity. The Defendant's reliance on that particular policy clause is an act of bad faith due to the fact that the clause is void and against public policy in the State of Mississippi. See, *Palatine Ins. Co. Ltd. v. Nunn,* 55 So. 44 (Miss. 1911), which states in pertinent part:

> The question is presented in this case whether or not under our valued policy law, a company can limit its liability in a case of a total loss, as is here shown to have been sustained, by inserting in the policy a provision that the company shall not be liable "beyond the actual value destroyed

-7-

. . ., for loss occasioned by ordinances or law regulating construction or repair of buildings."

"An insurance company must determine the valuation of the property. It can then insure such parts of that valuation as the parties may agree on, but whatever amount it does insure, receiving premiums on that amount, is the final measure of its liability in case of total loss, and it can not reduce this amount by inserting in the policy provisions seeking to impose upon the insured the burden of co-insurer. The amount named in the policy and on which amount the insured pays premium, is practically liquidated damages in case of a total loss. There is nothing harsh about the law. It was manifestly enacted to meet and remedy a thoroughly well known evil, and it is as perfectly a part of the contract, being written into it, as any other stipulation therein. **The statute supervenes all policies issued under it and writes out of them all stipulations inconsistent with itself.**" (emphasis added)

The *Palatine* Court required the entire policy limit to be paid, as should be done here.

### GROSSLY NEGLIGENT ADJUSTMENT OF THE INSURANCE CLAIM

23. Plaintiff refers to paragraphs 1 through 22, inclusive, and incorporate them as if set forth in full herein.

24. Neither the defendant insurance company nor its adjuster fulfilled their contractual obligations under the policy to inspect and determine the damage to the Plaintiff's property and contents and properly adjust the claim. Defendant and its adjuster completely failed to investigate the contents portion of the claim, although this was a specific additional covered loss under the terms of the policy. The Plaintiff and its consultants made numerous requests for the adjustment of the contents claim, to no avail, and the claim was subsequently denied. The gross negligence of Defendant Union was a proximate cause of the failure to fully compensate Plaintiff for its actual damages.

## GROSS NEGLIGENCE, MALICE AND WILLFUL DISREGARD, AND BAD FAITH DENIAL OF INSURANCE CLAIM

25. Plaintiff refers to paragraphs 1 through 24, inclusive, and incorporate them as if set forth in full herein.

26. Plaintiff's hotel building and contents sustained substantial damage caused by wind and water as a result of the April 28, 2014 tornado and subsequent rains and the rupture of the sprinkler system caused by tornado damage. Defendant admitted that this was a covered loss and had a duty to immediately adjust the claim in good faith. Defendant continued to delay the adjustment of the claim in an effort to force Plaintiff to accept a lesser settlement of the claim due to the business interruption and financial obligations. Defendant further wrongly denied the claim for business personal property and the supplemental claim for the constructive total loss of the building, determined by the City of Tupelo, Mississippi.

27. The investigation was grossly negligent in that the Defendant failed to timely and properly adjust the contents portion of the claim and to consider the building a total loss.

## NEGLIGENCE OF RENASANT INSURANCE, INC.

28. Plaintiff refers to paragraphs 1 through 27, inclusive, and incorporate them as if set forth in full herein.

29. Defendant, Renasant Insurance, Inc., is a Mississippi corporation, qualified to do and doing business in Mississippi, whose principal place of business is in Tupelo, Lee County, Mississippi.

30. Defendant, Renasant Insurance, Inc., wrote the coverage for the subject property, buildings and contents. Although the Plaintiff requested full coverage for any and all losses, including but not limited to coverage for loss or damage to the building and contents, as well as coverage for business interruption and debris removal, the Defendant insurance agency failed to procure a proper insurance policy that would provide adequate coverage for water damage to contents. Prior to writing coverage, the Plaintiff's property was inspected by representatives of Defendants, in order to determine proper coverage amounts. Due to the negligence of Defendants, the contents coverage limit is severely insufficient to cover the substantial contents loss that has been caused by the damages stated herein.

31. Moreover, Defendant, Renasant, was negligent in the procurement of insurance for the subject property in failing to secure more than $25,000 in debris removal coverage. The estimate for debris removal exceeds $300,000 and the Plaintiff was unaware of the coverage limitation for debris removal because Renasant negligently failed to deliver a full copy of the policy before the loss. Due to the negligence of Defendant Renasant, Plaintiff would not have known about the inadequate coverage for debris removal when any reasonably prudent insurance agent should have known that the debris removal coverage should have been a minimum of 5% of the building coverage limit, which in this case would have been $330,000 as opposed to $25,000.

### VIOLATION OF THE MS UNFAIR CLAIM PRACTICES ACT

32. Plaintiff refers to paragraphs 1 through 31, inclusive, and incorporate them as if set forth in full herein.

33. Defendant Union, individually and through its agents and employees, acted with gross negligence, bad faith and reckless disregard for the rights of Plaintiff and its members, and contrary to the insurance policy sold to the Plaintiff, in their investigation and adjustment of the claim. Although the claim was submitted promptly and properly, Union has failed to timely and properly adjust the claim and has failed to pay the insurance proceeds owed to Plaintiff in connection with the claim. These actions by Union and its agents are as a matter of law contrary to the Unfair Claim Practices Act, which has been adopted in Mississippi jurisprudence by the cases of *Florence M. Lewis v. Equity National Life Insurance Co.*, 637 So.2d 183 (Miss. 1994) and *Patrick Essinger, Sr., et al v. Liberty Mutual Fire Insurance Company*, 529 F.3d 264 (Miss. 2008). The *Lewis* case states in pertinent part:

> In June 1990, the NAIC (National Association of Insurance Commissioners) adopted the Model Unfair Claims Settlement Practices Act. Pursuant to its Standards for Prompt, Fair and Equitable Settlements Applicable to All Insurers, an insurer is allowed twenty-one days to advise the insured that his claim has been accepted or denied. If the investigation is not completed within that time, the insurer must advise the claimant in writing within forty-five days of the initial claim and every forty-five days thereafter of the reasons why additional time is required. Model Unfair Claims Settlement Practices Act §§7A and 7B (NAIC 1991).

The *Essinger* decision, quoting *Lewis*, states that "inordinate delays in processing claims and a failure to make a meaningful investigation have combined to create a jury question on bad faith. *Lewis v. Equity Nat. Life Ins. Co.*, 637 So.2d 183, 187-188 (Miss. 1994). The allegation in *Lewis* was a "bad-faith failure to investigate the claim that was made." Further, *Amfed Cos., LLC v. Jordan*, 2009 Miss. App. LEXIS 899 (Miss. Ct. App., Dec. 15, 2009) states "An unreasonable delay in resolving a claim can qualify as recoverable bad faith. *Miss. Code Ann.* §71-3-37(1) (Rev. 2000) sets forth that compensation shall be paid promptly. Additionally, Mississippi law imposes a duty upon insurers to "conduct a reasonably prompt investigation

-11-

of all relevant facts." In allowing a claim for punitive damages, the Court states in *Eichenseer v. Reserve Life Ins. Co.*, 682 F.Supp. 1355; U.S. Dist. LEXIS 3057 (Miss. 1988) that "Reserve Life would have been justified in delaying a final decision on plaintiff's claim if it had used the additional time to further investigate her prior medical history and the facts surrounding her hospitalization. Although the initial denial of her claim on June 2, 1983, may have been the result of mere negligence, the decision to repeatedly deny her claim until after suit was filed is the result of more than simple negligence." As in the cases cited herein, Defendant Union failed to conduct a reasonably prompt investigation of all relevant facts and is guilty of bad faith and subject to punitive damages. Even after being requested by the Plaintiff to do so, the Defendant Union wholly failed to investigate the relevant facts regarding the loss and failed to timely pay the legitimate claim of the Plaintiff under the policy of insurance.

WHEREFORE, PREMISES CONSIDERED, Plaintiff files this Complaint against the Defendants and demands judgment against the Defendants in an amount sufficient to fully compensate Plaintiff for the damages incurred in the form of property damage, contents damage, business interruption losses, debris removal cost, extra-contractual damages, costs, attorney's fees, pre-judgment interest and post-judgment interest and for punitive and exemplary damages in an amount sufficient to punish Defendants for their actions and to deter them from similar actions in the future, together with an award of attorneys' fees and damages caused to the Plaintiff as a result of Defendant Union's bad faith refusal to pay insurance proceeds. Plaintiff therefore demands judgment against Defendants for the following damages:

      a.  Business Personal Property - $1,000,000.00;

      b.  Building - $3,375,849.01 (Building coverage limit of $7,700,000.00 less $4,324,150.99 paid to date);

      c.  Outside Signs - $50,000.00;

    d. Debris Removal - $396,000.00; and

    e. Punitive Damages - The maximum amount permitted under §11-1-65 of the

    Mississippi Code, up to and including Ten Million Dollars ($10,000,000.00).

Plaintiff further demands trial by jury.

This the _1st_ day of October, 2014.

Respectfully submitted,

**ABRMP GROUP, LLC dba COMFORT**
**SUITES TUPELO, a Mississippi Limited**
**Liability Company, PLAINTIFF**

BY _____
    William C. Spencer, Sr., MSB No. 7732
    William C. Spencer, Jr., MSB No. 10365

SPENCER LAW FIRM
POST OFFICE BOX 907
TUPELO, MS 38802
PHONE: 662.821.1733
FAX: 662.842.6870

-13-

CL IL PJ 01 12 13

# Berkley
# Southeast Insurance Group

**Named Insured and Address**
ABRMP Group LLC
dba Comfort Suites Tupelo
1020 N Gloster St Ste 102
Tupelo, MS 38804

**Agent Name and Address**
Renasant Insurance, Inc 06393
PO Box 1808
Tupelo, MS 38802-0000
(662) 842-1321

**Policy No.**
CPA 4261756-40

**Issued By**
Union Insurance Company

Mailing Address:
1745 N Brown Rd, Suite 400
Lawrenceville, GA 30043-8156

*Welcome to the Berkley Southeast Insurance Group.*

*On behalf of our employees and the agents representing the Berkley Southeast Insurance group of companies, we would like to thank you for selecting us as your insurance provider. The insurance buying decision can be a difficult one. Once made however, you should feel confident in expertise of the people and the dedicated resources of the company you have selected.*

*As a regional insurance company, we are committed to providing insurance solutions and superior service to satisfy the needs of our local agents and policyholders. Thank you for placing your business through an independent agent and for choosing the Berkley Southeast Insurance Group.*

*Dennis L. Barger, CIC*



THIS POLICY OF INSURANCE IS ISSUED BY ONE OF THE FOLLOWING
COMPANIES AS INDICATED ON THE FIRST PAGE OF THE
DECLARATIONS:

Firemen's Insurance Company of Washington, D.C.
1209 Orange Street
Wilmington, Delaware 18901

Union Insurance Company
11201 Douglas Avenue
Urbandale, Iowa 50322

Continental Western Insurance Company
11201 Douglas Avenue
Urbandale, Iowa 50322

Acadia Insurance Company
23 Commerce Drive
Bedford, New Hampshire 03110

Administrative Office for the companies listed above:

Berkley Southeast Insurance Group
1745 N Brown Rd, Suite 400
Lawrenceville, GA 30043-8156
1-678-533-3400

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE
COMPANY NAMED ON THE DECLARATIONS PAGE.

Firemen's Insurance Company of Washington, D.C.

Laura L. Thorne, Secretary
Witnessing Signature

Kevin W. Nattrass
President

Continental Western Insurance Company

John F. Thelen, Secretary
Witnessing Signature

Michael G. Connor
President

Union Insurance Company

Ty Simmons, Secretary
Witnessing Signature

Craig Sparks
President

Acadia Insurance Company

Daniel L. Swift, Secretary
Witnessing Signature

Douglas Nelson
President

IN THE EVENT YOU SUFFER A LOSS OR ACCIDENT, YOU SHOULD CONTACT YOUR AGENT IMMEDIATELY

CL IL PJ 01 12 13

ABRMP Group LLC
dba Comfort Suites Tupelo
CPA 4261756-40
02/18/2014

CL PN 01 47 01 14

# POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM
### INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, (the "Act"), that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act:* The term "act of terrorism" means any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your _____ NEW or __X__ RENEWAL policy is affected as follows:

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, for calendar 2014 the United States Government generally reimburses 85% (for 2015 and beyond, percentages will be determined by Congress if the law is extended) of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

You should also know that the act, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

For property located in standard fire policy states there are state statutory exceptions covering certain fire losses if you decline coverage for acts of terrorism defined under the Act. If an act of terrorism certified under the act results in fire, we are required to pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to covered property and is subject to any limitations of any terrorism exclusion, or inapplicability or omission of a terrorism exclusion. This notice does not serve to create coverage for any loss which would otherwise be excluded under your policy.

The portion of your premium that is attributable to coverage for direct loss or damage that is caused by an act of terrorism certified under the act and where fire ensues in a statutory standard fire policy state (fire following terrorism)
is $0 _____, and does not include any charges for the portion of losses covered by the United States Government under the Act. Note, this premium is applied to your policy regardless if you accept or decline coverage for "acts of terrorism" below.

#### Acceptance or Rejection of Terrorism Insurance Coverage

| |
|---|
| I hereby elect to purchase terrorism coverage, subject to the limitations of the "Act" for acts of terrorism as defined by the "Act" for: (A) a prospective premium of $ 182 ____ through 12/31/2014, and (B) an estimated premium of $ 28 ____ for the period beyond 12/31/2014 (both including the fire following premium above, if applicable.) |
| I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism. |

**Possibility Of Additional Or Return Premium.** The premium for certified acts of terrorism coverage is calculated based in part on federal participation in payment of terrorism losses as set forth in the "Act". The federal program

established by the "Act" is scheduled to terminate at the end of 12/31/2014 unless extended by the Federal Government. If the federal program terminates or if the level of federal participation changes, the estimated premium shown in **(B)** above may change.

If the policy contains a Conditional Exclusion Of Terrorism endorsement, continuation of the coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If the policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue, unless previously rejected by you. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** above and will either charge additional premium or refund excess premium, if indicated. If we notify you of an additional premium charge, such additional premium will be due as specified in the notice.

| | |
|---|---|
| _____ | _____ |
| Policyholder/Applicants Signature | Union Insurance Company<br>Insurance Company |
| _____ | CPA 4261756 - 40 |
| Print Name | Quotation/ Policy Number |
| _____ | |
| Date | |

CL PN 01 47 01 14

ABRMP Group LLC
dba Comfort Suites Tupelo
4261756 - 40
02/18/2014

CL PN 02 49 01 14

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the Act), is included in your policy. You are hereby notified that under the Act the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury - in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events.

Under the formula, for calendar year 2014, the United States Government generally reimburses 85% (for 2015 and beyond, percentages will be determined by Congress if the law is extended) of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism as defined in the Act, is

**(A)** $182          through 12/31/2014, and **(B)** an estimated premium of     $ 28          for the period beyond

12/31/2014 and does not include any charges for the portion of losses covered by the United States Government under the Act.

**Possibility Of Additional Or Return Premium.** The premium for certified acts of terrorism coverage is calculated based in part on federal participation in payment of terrorism losses as set forth in the "Act". The federal program established by the "Act" is scheduled to terminate at the end of 12/31/2014 unless extended by the Federal Government. If the federal program terminates or if the level of federal participation changes, the estimated premium shown in **(B)** above may change.

If the policy contains a Conditional Exclusion Of Terrorism endorsement, continuation of the coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If the policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue, unless previously rejected by you. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** above and will either charge additional premium or refund excess premium, if indicated. If we notify you of an additional premium charge, such additional premium will be due as specified in the notice.

Name of Insurer:     Union Insurance Company
Policy Number:       CPA  4261756 - 40

**CO MM ST 09 08**

**Issuing Company:** Union Insurance Company

## SCHEDULE OF COMMISSIONS

**Policy No.: CPA 4261756-40**

| Named Insured Name and Address | Agency Name and Address | 06393 |
|---|---|---|
| ABRMP Group LLC | (662) 842-1321 | |
| dba Comfort Suites Tupelo | Renasant Insurance, Inc | |
| 1020 N Gloster St Ste 102 | PO Box 1808 | |
| Tupelo, MS 38804 | Tupelo, MS 38802-0000 | |

| LINE OF BUSINESS | COMMISSION PERCENTAGE |
|---|---|
| Commercial Property | 15.0% |
| General Liability | 15.0% |
| Commercial Auto | 15.0% |

* Please note that these percentages can be used to calculate your estimated commission for this policy. To find the actual commission amount that you will receive on this policy, please refer to your agency commission statement for this policy.

B IL DS 00 09 07

**Issuing Company:** Union Insurance Company
A IA Stock Corp
11201 Douglas Avenue
Urbandale, IA 50322

Administrative Home Office:
4820 Lake Brook Drive, Suite 300
Glen Allen, VA 23060
804-285-2700

# COMMERCIAL LINES POLICY
# COMMON POLICY DECLARATIONS

## Renewal

| | |
|---|---|
| Policy No.: CPA 4261756 - 40 | Billing Method: Direct Bill |
| Previous Policy No.: 4372867-13 | Payment Plan: 11 |

| Named Insured Name and Address | Agency Name and Address | 06393 |
|---|---|---|
| ABRMP Group LLC | (662) 842-1321 | |
| dba Comfort Suites Tupelo | Renasant Insurance, Inc | |
| 1020 N Gloster St Ste 102 | PO Box 1808 | |
| Tupelo, MS 38804 | Tupelo, MS 38802-0000 | |

**POLICY PERIOD**

Policy Period: From 02/18/2014 to 02/18/2015 at 12:01 A.M. Standard Time at your mailing address shown above.

**Business Description:** Hotel

**Form of Business:** Limited Liability Company

IN RETURN FOR YOUR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

|  |  | Premium |
|---|---|---|
| Commercial Property Coverage Part | $ | 22,521.00 |
| Commercial General Liability Coverage Part | $ | 9,603.00 |
| Commercial Auto Coverage Part | $ | 288.00 |
| **TOTAL:** | $ | 32,412.00 |

**FORMS APPLICABLE TO ALL COVERAGE PARTS**

*See attached "Schedule of Forms and Endorsements"*

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGES FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

Countersigned: _____     By: _____

                  (Date)                                             (Authorized Representative)

Includes copyrighted material of Insurance Services Offices, with its permission
B IL DS 00 09 07

CL LOC 09 08

# LOCATION SCHEDULE

Location # 1        1665 N Gloster St
                    Tupelo, MS 38801

CL IL FS 01 09 08

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Policy Number: **CPA 4261756 - 40**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial Common Policy

| State* | Number | Edition | Description |
|---|---|---|---|
| ALL | B IL DS 00 | 09-2007 | Commercial Lines Policy Common Policy Declarations |
| ALL | CL IL 00 06 | 03-2005 | Declarations Extension Endorsement |
| ALL | CL IL FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | CL IL PJ 01 | 12-2013 | Policy Jacket w/signatures |
| ALL | CL LOC | 09-2008 | Location Schedule |
| ALL | IL 00 17 | 11-1998 | Common Policy Conditions |

## Commercial Auto Coverage Part

| State* | Number | Edition | Description |
|---|---|---|---|
| ALL | IL 00 03 | 09-2008 | Calculation of Premium |
| ALL | IL 00 21 | 09-2008 | Nuclear Energy Liability Exclusion Endorsement - Broad Form |
| ALL | IL 02 82 | 09-2008 | Mississippi Changes - Cancellation and Nonrenewal |

## Commercial General Liability Coverage Part

| State* | Number | Edition | Description |
|---|---|---|---|
| ALL | IL 00 03 | 09-2008 | Calculation of Premium |
| ALL | IL 00 21 | 09-2008 | Nuclear Energy Liability Exclusion Endorsement - Broad Form |
| ALL | IL 02 82 | 09-2008 | Mississippi Changes - Cancellation and Nonrenewal |
| ALL | IL 09 99 | 01-2007 | Disclosure Of Premium And Estimated Premium For Certified Acts Of Terrorism Coverage (Pursuant To Terrorism Risk Insurance Act Of 2002) |

## Commercial Property Coverage Part

| State* | Number | Edition | Description |
|---|---|---|---|
| ALL | IL 00 03 | 09-2008 | Calculation of Premium |
| ALL | IL 01 19 | 01-2007 | Mississippi Changes |
| ALL | IL 02 82 | 09-2008 | Mississippi Changes - Cancellation and Nonrenewal |
| ALL | IL 04 15 | 04-1998 | Protective Safeguards |
| ALL | IL 09 35 | 07-2002 | Exclusion of Certain Computer Related Losses |
| ALL | IL 09 52 | 01-2008 | Cap on Losses From Cert Acts of Terrorism |
| ALL | IL 09 95 | 01-2007 | Conditional Exclusion Of Terrorism (Relating To Disposition Of Federal Terrorism Risk Insurance Act Of 2002) |
| ALL | IL 09 99 | 01-2007 | Disclosure Of Premium And Estimated Premium For Certified Acts Of Terrorism Coverage (Pursuant To Terrorism Risk Insurance Act Of 2002) |

*When the word "ALL" appears in the state column, the form applies to all states on the policy.

CL IL 00 06 03 05

# DECLARATIONS EXTENSION ENDORSEMENT

This endorsement, effective _____ 02/18/2014 _____ Forms a part of policy No. _CPA_4261756- 40_

Issued to _ABRMP Group LLC_ by _Union Insurance Company_

One or more of the following items

Insured's Name                           Fill-in Area(s) of Variable Text Endorsements

Insured's Mailing Address                Additional Interested Parties / Loss Payees

Covered Property / Locations             Rates

Classifications / Class Codes            Deductibles

Limits / Exposures                       Insured's Legal Status / Business of Insured

Premium Determination                    Forms Applicable

is (are) completed and/or clarified as shown below:

Named Insured Endorsement. The Named Insured is completed to read as follows.

    ABRMP Group LLC, dba Comfort Suites Tupelo

    Ramesh and Upendra Patel,

CL IL 00 06 03 05                                                    Page 1 of 1

INTERLINE
IL 04 15 04 98

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

### SCHEDULE*

| Prem. No. | Bldg No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-1 - Auto Sprinkler System |
| Describe any "P-9": | | |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A.** The following is added to the:

Commercial Property Conditions
General Conditions in the
  Farm Property - Other Farm
  Provisions Form - Additional Coverages,
  Conditions, Definitions
General Conditions in the Mobile Agricultural
  Machinery and Equipment Coverage Form
General Conditions in the Livestock Coverage
  Form

**PROTECTIVE SAFEGUARDS**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

   **"P-1" Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   a. Any automatic fire protective or extinguishing system, including connected:

      (1) Sprinklers and discharge nozzles;

      (2) Ducts, pipes, valves and fittings;

      (3) Tanks, their component parts and supports; and

      (4) Pumps and private fire protection mains.

   b. When supplied from an automatic fire protective system:

      (1) Non-automatic fire protective systems; and

      (2) Hydrants, standpipes and outlets.

   **"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

   a. Connected to a central station; or

   b. Reporting to a public or private fire alarm station.

   **"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

   **"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

   **"P-9"** The protective system described in the Schedule.

**B.** The following is added to the EXCLUSIONS section of:

CAUSES OF LOSS - BASIC FORM
CAUSES OF LOSS - BROAD FORM
CAUSES OF LOSS - SPECIAL FORM
MORTGAGE HOLDERS ERRORS AND
    OMISSIONS COVERAGE FORM
STANDARD PROPERTY POLICY
CAUSES OF LOSS FORM - FARM
    PROPERTY
MOBILE AGRICULTURAL MACHINERY AND
    EQUIPMENT COVERAGE FORM
LIVESTOCK COVERAGE FORM

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

    Copyright, Insurance Services Office, Inc., 1997     **IL 04 15 04 98**

IL 09 95 01 07

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN PROTECTION COVERAGE FORM
FARM COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

| The **Exception Covering Certain Fire Losses** (Paragraph **D.**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy: | |
|---|---|
| **State(s)** | **Coverage Form, Coverage Part Or Policy** |
| Connecticut, Georgia, Maine, | BOILER AND MACHINERY COVERAGE PART (As Applicable) |
| Massachusetts, New York | COMMERCIAL INLAND MARINE COVERAGE PART (As Applicable) |
| North Carolina, New Jersey, | COMMERCIAL PROPERTY COVERAGE PART (As Applicable) |
| Rhode Island, West Virginia; or | EQUIPMENT BREAKDOWN PROTECTION COVERAGE FORM (As Applicable) |
| Virginia (Unless Terrorism Coverage has been Rejected) | FARM COVERAGE PART (As Applicable) |
| Illinois, Iowa, Missouri, Wisconsin | STANDARD PROPERTY POLICY (As Applicable) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Applicability Of The Provisions Of This Endorsement**

  1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

  a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form, Coverage Part or Policy; or

© ISO Properties, Inc., 2005

b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

(1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

(2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

(3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and

b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

a. Use or threat of force or violence; or

b. Commission or threat of a dangerous act; or

c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

     © ISO Properties, Inc., 2005     IL 09 95 01 07

5. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

With respect to this Item **C.5.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Coverage Part or Policy.

**D. Exception Covering Certain Fire Losses**

The following exception to the Exclusion Of Terrorism applies only if indicated and as indicated in the Schedule of this endorsement.

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

**E. Application Of Other Exclusions**

1. When the Exclusion Of Terrorism applies in accordance with the terms of C.1. or C.2., such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form, Coverage Part or Policy.

2. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

POLICY NUMBER  CPA 4261756-40

IL 09 99 01 07

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT)

### SCHEDULE

**SCHEDULE - PART I**

**Terrorism Premium (Certified Acts)**

(A) Premium through end of year (12/31/2014)      $ 182

(B) Estimated Premium beyond the date specified above      $ 28

(Refer to Paragraph C. in this endorsement.)

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

All Coverage Forms other than Commercial Auto, Crime, Farm Multi-Peril or Employment-Practice Liability Coverages.

**Additional information, if any, concerning the terrorism premium:**

The premiums stated above are only estimates and are subject to change because of rounding to the nearest dollar, premium audit or changes made to the policy during its term.

**SCHEDULE - PART II**

**Federal share of terrorism losses      85      % Year: 2014**

(Refer to Paragraph B. in this endorsement.)

**Federal share of terrorism losses      TBD      % Year: 2015**

(Refer to Paragraph B. In this endorsement.)

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

## B. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. For losses occurring in 2006, the federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. For losses occurring in 2007, the federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. If the federal program is extended beyond 2007, the applicable percentage is shown in Part II of the Schedule of this endorsement or in the policy Declarations.

## C. Possibility Of Additional Or Return Premium

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act. The federal program established by the Act is scheduled to terminate at the end of the year specified in Part I of the Schedule of this endorsement, unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in (B) in Part I of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in (B) in Part I of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

  © ISO Properties, Inc., 2005  IL 09 99 01 07

COMMERCIAL PROPERTY
B CP DS 01 10 00

**Issuing Company:** Union Insurance Company

# COMMERCIAL PROPERTY DECLARATIONS

### COINSURANCE CONTRACT

**Policy No.:** CPA 4261756 - 40
Previous Policy No.: 4372867-13

| NAMED INSURED AND ADDRESS | AGENCY NAME AND ADDRESS | 06393 |
|---|---|---|
| ABRMP Group LLC | (662) 842-1321 | |
| dba Comfort Suites Tupelo | Renasant Insurance, Inc | |
| 1020 N Gloster St Ste 102 | PO Box 1808 | |
| Tupelo, MS 38804 | Tupelo, MS 38802-0000 | |

| POLICY PERIOD |
|---|

Policy Period: From 02/18/2014 to 02/18/2015 at 12:01 A.M. Standard Time at your mailing address shown above.

| TOTAL ADVANCE PREMIUM | $22,521 |
|---|---|

| DESCRIPTION OF PREMISES AND COVERAGES PROVIDED |
|---|

| Description Of Property | Limit | Cause Of Loss | Coinsurance | Valuation | Inflation Guard |
|---|---|---|---|---|---|
| **LOCATION: # 1** | **Deductible:** | **$5,000** | | | |
| 1665 N Gloster St | | | | | |
| Tupelo, MS 38801 | | | | | |
| **BUILDING # 1** | | | | | |
| 4 Story Frame Building | | | | | |
| Occupied As Hotel, 80 suites, with pool, no restaurant | | | | | |
| Building | 7,700,000 | SPECIAL | 90% | RC | |
|   Earthquake Deductible of 5% Applies | | | | | |
| Business Personal Property | 1,000,000 | SPECIAL | 90% | RC | |
|   Earthquake Deductible of 5% Applies | | | | | |
| Business Income | 500,000 | SPECIAL | No Coinsurance | | |
| Including Rental Value | | | | | |
| Including Extra Expense | | | | | |
|   Earthquake Applies | | | | | |
|   1/6 Monthly Limit of Indemnity | | | | | |

KEY: ACV = Actual Cash Value  AV = Agreed Value  FBV = Functional Building Valuation  RC = Replacement Cost
MR = Monthly Reporting

**COVERAGES APPLICABLE TO ALL LOCATIONS**

| MORTGAGE HOLDER(S) |
|---|

Location # 1    Building # 1    Three Rivers Local Development Co., Inc
P O Box 690
Pontotoc, MS 38863

| FORMS APPLICABLE |
|---|

**Policy No.:** CPA 4261756 - 40

*See attached "Schedule of Forms and Endorsements"*

COMMERCIAL PROPERTY
CL CP FS 01 09 08

Policy Number: **CPA 4261756 - 40**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial Property

| State* | Number | Edition | Description |
|--------|--------|---------|-------------|
| ALL | B CP DS 01 | 10-2000 | Commercial Property Declarations |
| ALL | CL CP FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | CL CP 00 02 | 02-2012 | Property Extension Endorsement (B) |
| ALL | CP 00 10 | 06-2007 | Building and Personal Property Coverage Form |
| ALL | CP 00 30 | 06-2007 | Business Income (And Extra Expense) Coverage Form |
| ALL | CP 00 90 | 07-1988 | Commercial Property Conditions |
| ALL | CP 01 40 | 07-2006 | Exclusion of Loss Due to Virus or Bacteria |
| ALL | CP 10 30 | 06-2007 | Causes Of Loss - Special Form |
| ALL | CP 10 32 | 08-2008 | Water Exclusion Endorsement |
| ALL | CP 10 40 | 08-1999 | Earthquake And Volcanic Eruption Endorsement |
| ALL | CP 12 18 | 06-2007 | Loss Payable Provisions |
| ALL | CP 14 40 | 06-2007 | Outside Signs |

*When the word "ALL" appears in the state column, the form applies to all states on the policy.

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage - Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2006

COMMERCIAL PROPERTY
CP 12 18 06 07

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUILDERS' RISK COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number: | | Building Number: | | Applicable Clause (Enter C., D., E., or F.): | C |
|---|---|---|---|---|---|
| **Description Of Property:** | | | | | |
| **Loss Payee Name:** | Three Rivers Local Development Co., Inc | | | | |
| **Loss Payee Address:** | P O Box 690 Pontotoc MS 38863 | | | | |

| Premises Number: | 1 | Building Number: | 1 | Applicable Clause (Enter C., D., E., or F.): | C |
|---|---|---|---|---|---|
| **Description Of Property:** | | | | | |
| **Loss Payee Name:** | Three Rivers Local Development Co., Inc | | | | |
| **Loss Payee Address:** | P O Box 690 Pontotoc MS 38863 | | | | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**C. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**D. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

    **a.** Warehouse receipts;

    **b.** A contract for deed;

    **c.** Bills of lading;

    **d.** Financing statements; or

    **e.** Mortgages, deeds of trust, or security agreements.

CP 12 18 06 07      © ISO Properties, Inc., 2007      Page 1 of 2

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

a. We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

c. If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

d. If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(2) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

3. If we cancel this policy, we will give written notice to the Loss Payee at least:

a. 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

4. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**E. Contract Of Sale Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

a. Adjust losses with you; and

b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**F. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

2. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

© ISO Properties, Inc., 2007     CP 12 18 06 07

COMMERCIAL PROPERTY
CP 14 40 06 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OUTDOOR SIGNS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number: 1 | | Building Number: 1 |
|---|---|---|
| Description Of Sign: | Outdoor Sign not attached to building | |
| Construction Of Sign: | Entirely Metal      X Other | |
| Limit Of Insurance: | $ 50,000 | |
| Coinsurance Percentage: | 90% | |
| Additional Premium: | $ 333.00 | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the outdoor signs described in the Schedule, the provision in the Limits Of Insurance section which pertains to signs does not apply. The limit applicable to each sign is shown in the Schedule. The limit applicable to each sign is the most we will pay for loss or damage to the sign in any one occurrence.

© ISO Properties, Inc., 2006

COMMERCIAL GENERAL LIABILITY
B CG DS 01 10 01

**Issuing Company:** Union Insurance Company

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**Policy No.:** CPA 4261756 - 40
Previous Policy No.: 4372867-13

| NAMED INSURED AND ADDRESS | AGENCY NAME AND ADDRESS | 06393 |
|---|---|---|
| ABRMP Group LLC | (662) 842-1321 | |
| dba Comfort Suites Tupelo | Renasant Insurance, Inc | |
| 1020 N Gloster St Ste 102 | PO Box 1808 | |
| Tupelo, MS 38804 | Tupelo, MS 38802-0000 | |

**POLICY PERIOD**

Policy Period: From 02/18/2014 to 02/18/2015 at 12:01 A.M. Standard Time at your mailing address shown above.

Form of Business:
Individual_____ Partnership_____ Joint Venture_____ Trust___ Limited Liability Company__X__
Organization, including a corporation (but not including a partnership, joint venture or limited liability company)_____

**TOTAL ADVANCE PREMIUM          $ 9,603**

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| Each Occurrence Limit | $ 1,000,000 | |
| Damage to Premises Rented to You Limit | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |
| Hired/Non-Owned Auto Limit | $ | |
| Personal & Advertising Injury Limit | $ 1,000,000 | Any One Person or Organization |
| General Aggregate Limit | $ 2,000,000 | |
| (Other Than Products-Completed Operations) | | |
| Products-Completed Operations Aggregate Limit | $ 2,000,000 | |

**Location of All Premises You Own, Rent or Occupy:**

*See attached "Schedule of Locations"*

**Policy No.:** CPA 4261756 - 40

| CLASSIFICATION & PREMIUM |
|---|

The Premium & Classifications are subject to change by audit. Audit period: ANNUALLY

| Classification | Code No. | Premium Base | Rate Prem/ Ops | Rate Prod/ Comp Ops | Advance Premium Prem/ Ops | Advance Premium Prod/ Comp Ops | Other |
|---|---|---|---|---|---|---|---|
| **Mississippi** | | | | | | | |
| **Location #1** | | | | | | | |
| Hotels and Motels - with pools or beaches - four stories or more - Products-completed operations are subject to the General Aggregate Limit | 45191 | $2,042,352 Gross Sales | 4.352 | | $8,888 | | |
| Premium for Endorsements | | | | | | | $635 |
| Premium for Terrorism | | | | | | | $80 |
| | | **Total Advance Premium** | | | | $9,603 | |

| FORMS ATTACHED TO THIS POLICY |
|---|

*See attached "Schedule of Forms and Endorsements"*

Includes copyrighted material of Insurance Services Offices, Inc., with its permission   **B CG DS 01 10 01**

COMMERCIAL GENERAL LIABILITY
CL CG FS 01 09 08

Policy Number: **CPA 4261756 - 40**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial General Liability

| State* | Number | Edition | Description |
|--------|--------|---------|-------------|
| ALL | B CG DS 01 | 10-2001 | Commercial General Liability Declarations |
| ALL | CL CG FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | CG 00 01 | 12-2007 | Commercial General Liability Coverage Form |
| ALL | CG 00 68 | 05-2009 | Recording And Distribution Of Material Or Information In Violation Of Law Exclusion |
| ALL | CG 04 35 | 12-2007 | Employee Benefits Liability Form |
| ALL | CG 20 08 | 11-1985 | Additional Insured - Users Of Golfmobiles |
| ALL | CG 20 26 | 07-2004 | Additional Insured - Designated Person Or Organization |
| ALL | CG 20 29 | 11-1985 | Additional Insured - Grantor Of Franchise |
| ALL | CG 21 44 | 07-1998 | Limitation Of Coverage To Designated Premises Or Project |
| ALL | CG 21 46 | 07-1998 | Abuse Or Molestation Exclusion |
| ALL | CG 21 47 | 12-2007 | Employment Related Practices Exclusion |
| ALL | CG 21 67 | 12-2004 | Fungi Or Bacteria Exclusion |
| ALL | CG 21 70 | 01-2008 | Cap On Losses From Certified Acts Of Terrorism |
| ALL | CG 21 76 | 01-2008 | Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism |
| ALL | CG 21 87 | 01-2007 | Exclusion Of Terrorism Relating To Disposition Of Federal Terrorism Risk Insurance Act |
| ALL | CG 21 96 | 03-2005 | Silica Or Silica - Related Dust Exclusion |
| ALL | CG 22 45 | 07-1998 | Exclusion - Specified Therapeutic Or Cosmetic Services |
| ALL | CG 24 04 | 05-2009 | Waiver Of Transfer Of Rights Of Recovery Against Others To Us |
| ALL | CG 24 16 | 12-2007 | Canoes or Rowboats |
| ALL | CL CG 01 14 | 11-2010 | Amendment of Primary and Excess Provisions (Additional Insureds) |
| ALL | CL CG 04 42 | 11-2010 | General Liability Ultra Endorsement |
| ALL | CL CG 21 08 | 11-2010 | Asbestos Exclusion |
| ALL | CL CG 21 45 | 11-2010 | Exclusion - Lead Exclusion |

*When the word "ALL" appears in the state column, the form applies to all states on the policy.

COMMERCIAL GENERAL LIABILITY
CG 04 35 12 07

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE

### THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
### PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit Of Insurance | | Each Employee Deductible | Premium |
|---|---|---|---|---|
| Employee Benefits Programs | $ 1,000,000 | each employee | $ 1,000 | $ 285.00 |
| | $ 2,000,000 | aggregate | | |
| Retroactive Date: | 12/15/2008 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I - Coverages:**

**COVERAGE - EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section III - Limits Of Insurance); and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

  **b.** This insurance applies to damages only if:

    **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

    **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

    **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

  **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

    **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2. **Exclusions**

This insurance does not apply to:

a. **Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. **Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

c. **Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

d. **Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f. **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g. **ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h. **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i. **Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j. **Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B. For the purposes of the coverage provided by this endorsement:

1. All references to Supplementary Payments - Coverages **A** and **B** are replaced by Supplementary Payments - Coverages **A**, **B** and **Employee Benefits Liability**.

2. Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

C. For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 3. of **Section II Who Is An Insured** are replaced by the following:

2. Each of the following is also an insured:

a. Each of your "employees" who is or was authorized to administer your "employee benefit program".

b. Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

© ISO Properties, Inc., 2006
CG 04 35 12 07

c. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, **Section III - Limits Of Insurance** is replaced by the following:

   1. **Limits Of Insurance**

      a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

         (1) Insureds;

         (2) "Claims" made or "suits" brought;

         (3) Persons or organizations making "claims" or bringing "suits";

         (4) Acts, errors or omissions; or

         (5) Benefits included in your "employee benefit program".

      b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

      c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

         (1) An act, error or omission; or

         (2) A series of related acts, errors or omissions

         negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

   2. **Deductible**

      a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

      b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

      c. The terms of this insurance, including those with respect to:

         (1) Our right and duty to defend any "suits" seeking those damages; and

         (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

         apply irrespective of the application of the deductible amount.

      d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

E. For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV - Commercial General Liability Conditions** are replaced by the following:

   2. **Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

      a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

         (1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. Excess Insurance

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Schedule of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

 © ISO Properties, Inc., 2006 CG 04 35 12 07

F. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   a. This endorsement is canceled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The "employee benefit programs" insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this endorsement for future payment of damages; and

   d. Other related factors.

   The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

   The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

   Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

G. For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

      a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

 © ISO Properties, Inc., 2006 CG 04 35 12 07

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
| --- |
| Three Rivers Local Development Co., Inc<br>P O Box 690<br>Pontotoc, MS 38863 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| United States Small Business Adminstration Mississippi District Office |
| AmSouth Plaza |
| 210 |
| E Capital, Dte 900 |
| Jackson, MS 39201 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

CG 20 26 07 04 © ISO Properties, Inc., 2004 Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| ABRMP Management LLC<br>1020 N Bloster #110<br>Tupelo, MS 38804 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

© ISO Properties, Inc., 2004   **Page 1 of 1**

COMMERCIAL GENERAL LIABILITY
CG 20 29 11 85

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - GRANTOR OF FRANCHISE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

Name of Person or Organization:

Choice Hotels International Inc, 10750 Columbia Pike, Silver Spring, MD 20901

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as grantor of a franchise to you.

Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY
CG 21 44 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ THIS CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| |
|---|
| **Premises:** |
| 1665 N Gloster, Tupelo, MS 38801 |
| **Project:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

 Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2. **Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

　**(a)** Refusal to employ that person;

　**(b)** Termination of that person's employment; or

　**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b) or (c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2. **Exclusions of Section 1 - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

　**(a)** Refusal to employ that person;

　**(b)** Termination of that person; or

　**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, **or (c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b) or (c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 22 45 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ THIS CAREFULLY.**

# EXCLUSION - SPECIFIED THERAPEUTIC OR COSMETIC SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Description Of Operations: |
|---|
|  |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph 2., **Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy.

 Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Name Of Person Or Organization:**<br>Choice Hotels International Inc 10750 Columbia Pike Silver Spring, MD 20901 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others** To Us of **Section IV - Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008

COMMERCIAL AUTO
B CA DS 03 01 12

**Issuing Company:** Union Insurance Company

# BUSINESS AUTO DECLARATIONS

**Policy No.:** CPA 4261756 - 40
**Previous Policy No.:** 4372867-13

## ITEM ONE

| NAMED INSURED AND ADDRESS | AGENCY NAME AND ADDRESS | 06393 |
|---|---|---|
| ABRMP Group LLC | (662) 842-1321 | |
| dba Comfort Suites Tupelo | Renasant Insurance, Inc | |
| 1020 N Gloster St Ste 102 | PO Box 1808 | |
| Tupelo, MS 38804 | Tupelo, MS 38802-0000 | |

## POLICY PERIOD

The Policy Period is from 02/18/2014 to 02/18/2015 12:01 A.M. Standard Time at your Mailing Address shown above.

**Form of Business:** Limited Liability Company

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| Premium shown is payable at inception | $ | 288 |
|---|---|---|

**Audit Period (If Applicable):**

**Endorsements Attached To This Policy:**

See attached "Schedule of Forms and Endorsements"

| Countersignature Of Authorized Representative |
|---|
| Name: |
| Title: |
| Signature: |
| Date: |

**Note** Officer's facsimile signatures may be inserted here, on the policy cover or elsewhere at the company's option.

Policy No.:     CPA 4261756 - 40

**ITEM TWO**

Schedule of Coverages and Covered Autos

This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.**

| Coverages & Limits | Covered Autos | Premium |
|---|---|---|
| Liability | 8, 9 | $          288 |
| Limit = $1,000,000 | | |
| Personal Injury Protection | | $ |
| (Or Equivalent No-Fault Coverage) | | |
| Limit = Separately Stated In Each PIP Endorsement | | |
| Minus $ *Item Three Schedule* Deductible. | | |
| Added Personal Injury Protection | | $ |
| (Or Equivalent Added No-Fault Coverage) | | |
| Limit = Separately Stated In Each Added PIP Endorsement | | |
| Auto Medical Payments | | $ |
| Limit = $ | | |
| Medical Expense And Income Loss Benefits | | $ |
| (Virginia Only) | | |
| Limit = Separately Stated In Each Medical Expense And | | |
|        Income Loss Benefits Endorsement | | |
| Uninsured Motorists | | $ |
| Limit = | | |
| Underinsured Motorists | | $ |
| (When not Included In Uninsured Motorists Coverage) | | |
| Limit = | | |
| Supplementary Uninsured Motorists (New York Only) | | $ |
| Limit = | | |
| The maximum amount payable under SUM Coverage shall | | |
| Be the policys SUM limits reduced and thus offset by motor vehicle | | |
| bodily injury liability insurance policy or bond payments received | | |
| from, or on behalf of, any negligent party involved in the accident as | | |
| specified in the SUM endorsement. | | |
| Physical Damage Comprehensive Coverage | | $ |
| Limit = Actual Cash Value Or Cost Of Repair, Whichever Is Less, | | |
|        Minus $ *Item Three Schedule* Deductible For Each Covered | | |
|        Auto, But No Deductible Applies To Loss Caused By Fire | | |
|        Or Lightning.  See Item Four For Hired Or Borrowed Autos. | | |
| Physical Damage Specified Causes Of Loss Coverage | | $ |
| Limit = Actual Cash Value Or Cost Of Repair, Whichever Is Less, | | |
|        Minus $ *Item Three Schedule* Deductible For Each Covered | | |
|        Auto, For Loss Caused By Mischief Or Vandalism. | | |
|        See Item Four For Hired Or Borrowed Autos | | |
| Physical Damage Collision Coverage | | $ |
| Limit = Actual Cash Value Or Cost Of Repair, Whichever Is Less, | | |
|        Minus $ *Item Three Schedule* Deductible For Each Covered | | |
|        Auto.  See Item Four For Hired Or Borrowed Autos | | |
| Physical Damage Towing and Labor | | $ |
| Limit = $ *Item Three Schedule*  For Each Disablement of a Private | | |
|        Passenger Auto. | | |

| | | |
|---|---|---|
| | Premium For Endorsements | $          0 |
| | Estimated Total Premium* | $        288 |

*This Policy May Be Subject to Final Audit.

**Policy No.:**  CPA 4261756 - 40

**ITEM THREE  Schedule of Covered Autos You Own**
(Absence of a limit or deductible in a column for that vehicle means that the coverage does not apply)

| Veh No. | DESCRIPTION | | | | Original Cost New | Stated Amount |
|---|---|---|---|---|---|---|
| | Year | Model | | VIN Number | | |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |
| | | | | | $ | $ |

Coverages

| Veh No. | Combined Single Limit | Personal Injury Protection | Med Payments Limit | Medical Expense & Income Loss |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

PREMIUMS

| Veh No. | Combined Single Limit | Basic PIP | Add'l PIP | Medical Payments | Medical Expense & Income Loss |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| Veh No. | PHYSICAL DAMAGE COVERAGE | | | | PHYSICAL DAMAGE PREMIUMS | | | | Total Premium |
|---|---|---|---|---|---|---|---|---|---|
| | Comp | Deductibles Specified Cause of Loss | Coll | Towing & Labor Limit | Comp | Specified Cause of Loss | Coll | Towing & Labor | |
| | | | | | $ | $ | $ | $ | $ |
| | | | | | $ | $ | $ | $ | $ |
| | | | | | $ | $ | $ | $ | $ |
| | | | | | $ | $ | $ | $ | $ |
| | | | | | $ | $ | $ | $ | $ |

**Policy No.:**   CPA  4261756 - 40

**ITEM THREE Schedule of Covered Autos You Own (Continued)**

<u>SCHEDULE OF LOSS PAYEES</u>

Veh No.        Except for Towing, All Physical Damage Loss Is Payable To You And The Loss Payee
               Named Below As Interests May Appear At The Time Of The Loss

Policy No.:    CPA  4261756 - 40

ITEM FOUR

Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums

| Liability Coverage - Cost of Hire Rating Basis For Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | |
| --- | --- | --- |
| Liability Coverage | Estimated Cost Of Hire For All States | Premium |
| Primary Coverage | | |
| Excess Coverage | | |
| | Total Premiums: | |

For "autos" used in your motor carrier operations, cost of hire means:
  (a) The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein;
  (b) The total remunerations of all operators and drivers' helpers, of hired automobiles whether with a driver by lessor or an "employee" of the lessee, or any other third party; and
  (c) The total dollar amount of any other costs (i.e., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| Liability Coverage - Cost of Hire Rating Basis For Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
| --- | --- | --- | --- |
| Liability Coverage | State | Estimated Cost Of Hire For Each State | Premium |
| Primary Coverage | | | |
| Excess Coverage | MS | If Any | $98 |
| | | Total Premiums: | $98 |

For "auto" NOT used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

B CA DS 03 01 12                    ISO Properties, Inc., 2005                    Page 5 of 10

Policy No.:   CPA 4261756 - 40

ITEM FOUR

Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Continued)

Cost of Hire Rating Basis For Mobile Equipment or Farm Equipment - Other than Physical Damage Coverages

| Coverage | State | Estimated Annual Cost of Hire For Each State | | Premium | |
|---|---|---|---|---|---|
| | | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Liability - Primary | | | | | |
| Liability - Excess | | | | | |
| Personal Injury Protection | | | | | |
| Extraordinary Medical Benefits | | | | | |
| Auto Medical Payments | | | | | |
| Medical Expense Benefits (Virginia Only) | | | | | |
| Income Loss Benefits (Virginia Only) | | | | | |
| | | | | Total Premiums: | $0 |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| Rental Period Rating Basis - For Mobile Or Farm Equipment | | | | | |
|---|---|---|---|---|---|
| Coverage | Town and State Where the Job Site is Located | Estimated Number of Days Equipment Will Be Rented | | Premium | |
| | | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Liability - Primary Coverage | | | | | |
| Liability - Excess Coverage | | | | | |
| Personal Injury Protection | | | | | |
| Medical Expenses Benefits (Virginia Only) | | | | | |
| Income Loss Benefits (Virginia Only) | | | | | |
| Auto Medical Payments | | | | | |
| | | | Total Premiums: | | |

Policy No.:     CPA  4261756 - 40

ITEM FOUR

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Continued)**

Physical Damage Coverage

| Physical Damage Coverages - Cost of Hire Rating Basis For All Autos (Other Than Mobile or Farm Equipment) | | | | |
|---|---|---|---|---|
| Coverage | State | Limit of Insurance | Estimated Annual Cost of Hire For Each State (Excluding Autos Hired with a Driver) | Premium |
| Comprehensive | | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ Deductible For Each Covered Auto, But No Deductible Applies to Loss Caused by Fire or Lightning | $ | $ |
| Specified Cause of Loss | | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ Deductible For Each Covered Auto For Loss Caused by Mischief or Vandalism | $ | $ |
| Collision | | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ Deductible For Each Covered Auto | $ | $ |
| | | | **Total Premiums:** | $ |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

B CA DS 03 01 12                    ISO Properties, Inc., 2005                    **Page 7 of 10**

**Policy No.:** CPA 4261756 - 40

ITEM FOUR

Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums (Continued)

Physical Damage Coverage

| Cost of Hire Rating Basis For Mobile or Farm Equipment - Physical Damage Coverages | | | | | | |
|---|---|---|---|---|---|---|
| | | | Estimated Annual Cost of Hire For Each State (Excluding Autos Hired with a Driver) | | Premium | |
| Coverage | State | Limit of Insurance | Mobile Equipment | Farm Equipment | Mobile Equipment | Farm Equipment |
| Comprehensive | | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ Deductible For Each Covered Auto, But No Deductible Applies to Loss Caused by Fire or Lightning | | | | |
| Specified Cause of Loss | | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ Deductible For Each Covered Auto For Loss Caused by Mischief or Vandalism | | | | |
| Collision | | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ Deductible For Each Covered Auto | | | | |
| | | | | | Total Premiums: | $0 |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

Policy No.:     CPA  4261756 - 40

## ITEM FIVE

### Schedule For Non-Ownership Liability

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other Than Garage Service Operations And Other Than Social Service Agencies | Number Of Employees | 25 | $190 |
| | Number Of Partners (Active and Inactive) | | $ |
| Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | $ |
| | Number Of Partners (Active and Inactive) | | $ |
| Social Service Agencies | Number Of Employees | | $ |
| | Number Of Volunteers Who Regularly Use Autos to Transport Clients | | $ |
| | Number of Partners (Active and Inactive) | | |

|  | **Total Premiums:** | $ 190 |
|---|---|---|

## ITEM SIX

### Schedule For Gross Receipts Or Mileage Basis

Address of Business Headquarters Location:

| Type of Risk (Check One) Rating Basis (Check One) Estimated Yearly (Gross Receipts or Mileage): | Public Autos Gross Receipts (Per $100) | Leasing or Rental Concerns Mileage (Per Mile) |
|---|---|---|
| | **Premiums** | |
| Liability | $ | |
| Personal Injury Protection | $ | |
| Added Personal Injury Protection | $ | |
| Auto Medical Payments | $ | |
| Medical Expense and Income Loss  Benefits (VA Only) | $ | |
| Comprehensive | $ | |
| Specified Causes Of Loss | $ | |
| Collision | $ | |
| Towing and Labor | | |

**Policy No.:**     CPA  4261756 - 40

**ITEM SIX**

**Schedule For Gross Receipts Or Mileage Basis  (Continued)**

When used as a premium basis:

**FOR PUBLIC AUTOS**

Gross Receipts means the total amount earned by the named insured for transporting passengers, mail and merchandise.   Gross Receipts does not include:

A.     Amounts you pay to air, sea or land carriers operating under their own permits.

B.     Advertising revenue.

C.     Taxes collected as a separate item and paid directly to the government.

D.     C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing "autos" during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

Gross receipts means the total amount earned by the named insured for the leasing or renting of "autos" to others without drivers.

Mileage means the total live and dead mileage of all "autos" you leased or rented to others without drivers.

**COMMERCIAL AUTO**
**CL CA FS 01 09 08**

Policy Number: **CPA 4261756 - 40**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial Auto

| State* | Number | Edition | Description |
|--------|--------|---------|-------------|
| ALL | B CA DS 03 | 01-2012 | Business Auto Declarations |
| ALL | CL CA FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| ALL | CA 00 01 | 03-2010 | Business Auto Coverage Form |
| ALL | CA 23 84 | 01-2006 | Exclusion Of Terrorism |
| ALL | CL CA 01 05 | 12-2011 | Silica or Silica-Related Dust Exclusion For Covered Autos Exposure |
| ALL | CL CA 01 07 | 12-2011 | Asbestos Exclusion For Covered Autos Exposure |

*When the word "ALL" appears in the state column, the form applies to all states on the policy.

## SWORN STATEMENT IN PROOF OF LOSS (Partial – Building Loss Only)

**$7,700,000.00**
**AMOUNT OF POLICY AT TIME OF LOSS**
February 18, 2014
**DATE ISSUED**
February 18, 2015
**DATE EXPIRES**

**CPA 4261756 - 40**
**POLICY NUMBER**
Renasant Insurance
**BROKER**
Tupelo, MS
**BROKER AT**

To the: **Union Insurance Company**

At time of loss, by the above-indicated policy of insurance you insured: **ABRMP Group LLC dba Comfort Suites Tupelo Ramesh and Upendra Patel.**

Against loss by **risk of physical loss or damage as defined in the policy form,** to the property described in the policy form, according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto, subject to the laws of the State of Mississippi.

1. **Time and Origin:** A **Tornado** loss occurred on **April 28, 2-14 at 3:00PM.** The cause and origin of the said loss were, **tornado damaged insured real and business personal property and interrupted normal business operations.**

2. **Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows: **hotel / motel, no exceptions.**

3. **Title and Interest:** At the time of the loss, the interest of your insured in the property described therein was **ownership.** No other person or persons had any interest therein or encumbrance thereon, except: **Three Rivers Local Development Co., Inc.; Renasant Bank; Brian P. Revere**

4. **Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: **no exceptions.**

5. **Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of the loss, **$7,700,000.00** as more particularly specified in the declarations page of the policy, besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

| | | |
|---|---|---|
| 6. | The Undisputed Amount of Actual Cash Value of said property at the time of the loss was | $ Not Found |
| 7. | The LOSS IS: | $4,903,469.22 |
| 8. | Less Amount of Deductible | $ 00.00 |
| 9. | The CLAIM is: | $4,903,469.22 |
| 10. | The Retained Depreciation is: | $ 579,318.23 |
| 11. | The Undisputed Amount of Actual Cash Value Loss and Claim under the above numbered policy is: | $4,324,150.99 |

The said loss did not originate by any act, design or procurement on the part of your insured, or this **affiant;** nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the **policy,** or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, an no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

State of _Mississippi_

County of _Clay_

Subscribed and sworn to before me this _7_ day of _August_, _2014_

_Janice B. Quintin_ Notary Public


ABRMP Group, LLC

by Bhupender Patel Insured
It's Manager and member

# SWORN STATEMENT IN PROOF OF LOSS

$ 1,000,000.00 (Business Personal Property)

CPA 4261756-40
**POLICY NUMBER**

AMOUNT OF POLICY AT TIME OF LOSS

Renasant Insurance

February 18, 2014     February 18, 2015

**AGENT**

DATE ISSUED      DATE EXPIRES

To the Union Insurance Company

of

At the time of loss, by the above indicated policy of insurance you insured ABRMP dba Comfort Suites Tupelo, MS. Ramesh and Upendra Patel

against loss by Tornadoe      to the property described under Schedule "A", according to the terms and conditions of the said policy and all forms, endorsements, transfers, and assignments attached thereto.

**1. Time and Origin:** A Tornadoe    loss occurred about the hour of \_\_\_ 3 \_\_\_ o'clock P M on the 28 day of April , 20 14 . The cause and origin of the said loss were: tornadoe damaged insured real and business personal property and interrupted normal business operations

**2. Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatsoever: Hotel/Motel, no exceptions

**3. Title and Interest:** At the time of the loss the interest of your insured in the property described herein was ownership \_\_\_\_\_. No other person or persons had any interest therein or encumbrance thereon, except: Three Rivers, Local Development Company Inc., and Renasant Bank

**4. Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location, or exposure of the property described, except: No exceptions

**5. Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of the loss, $ 1,000,000.00 as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

| | |
|---|---:|
| 6. The Actual Cash Value of said property at the time of the loss was........................$ | 1,036,997.00 |
| 7. The Whole Loss and Damage was ............................................................$ | 1,036,997.00 |
| 8. Less Amount of Deductible ...................................................................$ | Absorbed |
| 9. The Amount Claimed under the above numbered policy is...................................$ | 1,000,000.00 |

The said loss did not originate by any act, design, or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The Insured hereby covenants that no release has been, or will be given to, or settlement, or compromise made with any third party who may be liable in damages to the Insured, and the Insured in consideration of the payment made under this policy hereby subrogates the said Company to all rights and causes of action the said Insured has against any person, persons, or corporations whomsoever for damage arising out of or incident to said loss, or damage to said property and authorizes said Company to sue in the name of the Insured but at the cost of the Company any such third party, pledging full cooperation in such action.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver any of its rights.

SIGNATURE:

**NOTARY:** State of Mississippi ; County of Clay ; SS
On this 10 th day of September , 20 14 , before me appeared Bhupender Patel

who is known to be the person(s) named herein and who voluntarily executed this release.

Janice B. Duncan
Notary Signature

1-19-18
Date Commission Expires   ID # 95967

Form 2170F
© 2003 Nationwide Publishing Company, Inc.
http://www.claimspages.com

# SWORN STATEMENT IN PROOF OF LOSS

$ 1,000,000.00 (Business Personal Property)

**AMOUNT OF POLICY AT TIME OF LOSS**

February 18, 2014     February 18, 2015

DATE ISSUED     DATE EXPIRES

CPA 4261756-40

**POLICY NUMBER**

Renasant Insurance

AGENT

To the Union Insurance Company
of

At the time of loss, by the above indicated policy of insurance you insured ABRMP dba Comfort Suites Tupelo, MS.
Ramesh and Upendra Patel

against loss by Tornadoe to the property described under Schedule "A", according to the terms and conditions of the said policy and all forms, endorsements, transfers, and assignments attached thereto.

**1. Time and Origin:** A Tornadoe loss occurred about the hour of 3 o'clock P M on the 28 day of April , 20 14 . The cause and origin of the said loss were: tornadoe damaged insured real and business personal property and interrupted normal business operations .

**2. Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatsoever: Hotel/Motel, no exceptions

**3. Title and Interest:** At the time of the loss the interest of your insured in the property described herein was ownership . No other person or persons had any interest therein or encumbrance thereon, except: Three Rivers, Local Development Company Inc., and Renasant Bank

**4. Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location, or exposure of the property described, except: No exceptions

**5. Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of the loss, $ 1,000,000.00 as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6. The Actual Cash Value of said property at the time of the loss was............................$ 1,036,997.00
7. The Whole Loss and Damage was ..............................................................................$ 1,036,997.00
8. Less Amount of Deductible ........................................................................................$ Absorbed
9. The Amount Claimed under the above numbered policy is...........................................$ 1,000,000.00

The said loss did not originate by any act, design, or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The Insured hereby covenants that no release has been, or will be given to, or settlement, or compromise made with any third party who may be liable in damages to the Insured, and the Insured in consideration of the payment made under this policy hereby subrogates the said Company to all rights and causes of action the said Insured has against any person, persons, or corporations whomsoever for damage arising out of or incident to said loss, or damage to said property and authorizes said Company to sue in the name of the Insured but at the cost of the Company any such third party, pledging full cooperation in such action.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver any of its rights.

SIGNATURE:

**NOTARY:** State of Mississippi ; County of Clay ; SS
On this 10 th day of September , 20 14 , before me appeared Bhupender Patel

who is known to be the person(s) named herein and who voluntarily executed this release.

Janice B. Duncan
Notary Signature

1-19-18
Date Commission Expires

JANICE B. DUNCAN
ID # 95067
NOTARY PUBLIC
Commission Expires
Jan. 19, 2018
CLAY COUNTY

Form 2170F
© 2003 Nationwide Publishing Company, Inc.
http://www.claimspages.com

## SWORN STATEMENT IN PROOF OF LOSS (Supplemental–Building Loss)

$7,700,000.00
AMOUNT OF POLICY AT TIME OF LOSS
February 18, 2014
DATE ISSUED
February 18, 2015
DATE EXPIRES

CPA 4261756 - 40
POLICY NUMBER
Renasant Insurance
BROKER
Tupelo, MS
BROKER AT

To the: Union Insurance Company

At time of loss, by the above-indicated policy of insurance you insured; ABRMP Group LLC dba Comfort Suites Tupelo Ramesh and Upendra Patel.

Against loss by risk of physical loss or damage as defined in the policy form, to the property described in the policy form, according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto. subject to the laws of the State of Mississippi.

1.  **Time and Origin:** A Tornado loss occurred on April 28, 2014 at 3:00PM. The cause and origin of the said loss were, tornado and water destroyed insured real and business personal property and interrupted normal business operations.

2.  **Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows: hotel / motel, no exceptions.

3.  **Title and Interest:** At the time of the loss, the interest of your insured in the property described therein was ownership. No other person or persons had any interest therein or encumbrance thereon, except: Three Rivers Local Development Co., Inc. and Renasant Bank;

4.  **Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: no exceptions.

5.  **Total Insurance:** The total amount of insurance upon the property described by this policy was, at the time of the loss, $7,700,000.00 as more particularly specified in the declarations page of the policy, besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

| | | |
|---|---|---|
| 6. | The Undisputed Amount of Actual Cash Value of said property at the time of the loss was | $ Not Found |
| 7. | The LOSS IS: | $7,700,000.00* |
| 8. | Less Amount of Deductible | $ 00.00 |
| 9. | The CLAIM is: | $7,700,000.00 |
| 10. | The Retained Depreciation is: | $ 579,318.23 |
| 11. | The amount paid to date by insurer is: | $4,324,150.99 |
| 12. | The Undisputed Amount of Total Loss and Balance of Building Claim under the above numbered policy is: | $3,375,849.10 |
| 13. | The cost of demolition and debris removal is: | $ 396,000.00 |
| 14. | Total remaining part of building claim is: | $3,771,849.10 |

*See Order from City of Tupelo, attached as Exhibit "A."



The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, an no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

State of _Mississippi_

County of _Clay_

_____
Insured

Subscribed and sworn to before me this _10_ day of _September_, 2014.

_Janice B. Duncan_
Notary Public

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 95057
JANICE B. DUNCAN
Commission Expires
Jan. 19, 2018
CLAY COUNTY



12866

September 9, 2014

Mr. Bruce Patel
Comfort Suites
1665 North Gloster Street
Tupelo MS 38804

Re: Comfort Suites, 1665 North Gloster St., Tupelo MS.
Parcel #: 084N-19-022-01

Dear Mr. Patel:

On September 2, 2014, the City Council of the City of Tupelo has found that the
Comfort Suites building at 1665 North Gloster Street, is damaged beyond repair
because of wind and water damage and is a menace to the public health, safety
and welfare of the community. Therefore, the building must be demolished within
120 days of the City Council's decision. That means the completion date is
December 31, 2014. Please submit an application for demolition permit for
review by the Development Services Department.

Thank you in advance for your cooperation. Please contact me if you have
questions.

Regards,

Debra Byrd
Code Enforcement Manager

db

cc:   D. Wammack, Chief Building Inspector
      S. Hooper, Director of Development Services

